UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| ROBERT WILK, | Case No. 2:15-CV-1429 JCM (CWH) |
| Plaintiff(s), | ORDER |
| v. | |
| DWIGHT NEVEN, et al., | |
| Defendant(s). | |

Presently before the court is *pro se* plaintiff Robert Wilk's "rule 8 motion for relief." (ECF No. 44).[1] Defendants Dwight Neven, Cary Leavitt, and Jennifer Nash responded. (ECF No. 48). Wilk replied. (ECF No. 51).

Also before the court is Wilk's motion for summary judgment. (ECF No. 46). Defendants responded. (ECF No. 49). Wilk replied. (ECF No. 52).

Also before the court is Wilk's renewed motion for summary judgment. (ECF No. 57). Defendants responded. (ECF No. 74).[2] Wilk replied. (ECF No. 80).

Also before the court is defendants' motion for summary judgment. (ECF No. 77). Wilk responded. (ECF No. 81). Defendants replied. (ECF No. 82).

. . .

. . .

---

[1] Federal courts will sometimes ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category. *Castro v. United States*, 540 U.S. 375, 381–82 (2003). With discovery having already concluded, the "rule 8 motion for relief" will be treated as a motion for summary judgment.

[2] Defendants filed a motion for leave to file a response to Wilk's renewed motion for summary judgment. (ECF No. 70). The court denies this motion as moot, as the court grants summary judgment in defendants' favor in this order.

**James C. Mahan**
**U.S. District Judge**

**I.     Facts**

This action involves an inmate's 42 U.S.C. § 1983 claim. (ECF No. 18). Wilk was, at all times during the underlying incident, incarcerated in High Desert State Prison (HDSP). (ECF No. 18). Defendant Neven was the warden of HDSP. (ECF No. 18 at 2). Nash is an associate warden at HDSP. (ECF No. 33 at 2). Leavitt is a "correctional case work specialist 3" at HDSP, although Wilk identified him as "supervisor of caseworkers." (ECF Nos. 18 at 2; 33 at 2). Finally, Wilk names "John Doe II" in place of the floor officer for unit 7/8, and "John Doe III" in place of the "top 'bubble' control officer" for unit 7A/B. (ECF No. 18 at 2–3).

Wilk alleges that defendants breached their duty under the Eighth Amendment when they failed to protect him from Ysaquirle Nunley, who Wilk identified as "inmate #1050390." (ECF No. 18). In particular, Wilk alleges that Nunley threatened to physically harm Wilk on October 20, 2013. (ECF No. 18 at 4). Wilk reported the threat to his unit (7 A/B) floor officer, John Doe II, and participated in a "full classification committee" (FCC) meeting on October 24, 2013. (ECF No. 18 at 4).

Casework specialist Leavitt conducted the FCC meeting. (ECF No. 18 at 4). Wilk alleges that warden Neven was in attendance. (ECF No. 18 at 4). Wilk filled out a "central monitoring system" form to document that he sought protection from harm at the hands of another inmate. (ECF No. 18 at 4). The form listed inmate #1050390, Nunley, as being added to Wilk's "enemy list." *Id.* Wilk was moved into unit 8. *Id.* He claims that, at the time, he was led to believe that Nunley would be moved from unit 7/8. *Id.*

On the morning of February 11, 2014, Wilk was in the unit 7/8 yard waiting for an escort to the education building. (ECF No. 18 at 5). Nunley allegedly exited his cell without authorization and attacked Wilk with stones, gravel, and his fists. (ECF No. 18 at 5). As a result of the attack, Wilk suffered extreme physical, emotional, and mental pain. (ECF No. 18 at 6).

Wilk alleges that John Does II and III are responsible for Nunley's unauthorized exit from his cell. (ECF No. 18). Nash was one of the supervisors who responded to the incident. (ECF No. 18 at 6).

James C. Mahan
U.S. District Judge

- 2 -

On January 1, 2015, Wilk asked his caseworker on what date Nunley was added to his enemy list. (ECF No. 18 at 6). Wilk learned that the enemy list was updated the day of the attack—nearly four months after Wilk submitted the central monitoring system form. (ECF No. 18 at 6).

Wilk alleges that defendants ignored his earlier requests for protection and misrepresented that Nunley had been moved from his unit after Wilk's FCC hearing in October 2013. (ECF No. 18 at 5–6). Wilk alleges that the defendants failed to protect him in violation of his Eighth Amendment rights. (ECF No. 18 at 4–6).

On July 28, 2016, the court entered a screening order on Wilk's amended complaint (ECF No. 18), allowing Wilk to proceed on his Eighth Amendment failure to protect claims against defendants Neven, Nash, Leavitt, and John Does II–III. (ECF No. 23).

Wilk has filed three motions for summary judgment. (ECF Nos. 44, 46, 57). Defendants have filed a motion for summary judgment based on qualified immunity. (ECF No. 77).

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, this court will disputed factual issues in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to

James C. Mahan
U.S. District Judge

- 3 -

its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

As an initial matter, the court acknowledges that Wilk's complaint and other filings were filed *pro se* and are, therefore, held to less stringent standards. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.") (internal quotation marks and citation omitted). We liberally construe the filings and motions of a *pro se* inmate in a civil suit. *Bias v. Moynihan*, 508 F.3d 1212 (9th Cir. 2007).

#### A. 42 U.S.C. § 1983

Wilk's § 1983 claim is predicated on his allegation that defendants were deliberately indifferent to Wilk's safety, and as a result, failed in their duty to protect him from harm from other inmates. (ECF No. 18). In particular, Wilk alleges that defendants, by failing to update Wilk's enemy list in a timely fashion with due diligence, wrongfully allowed for Wilk and Nunley to be in the same area and thus enabled Nunley to attack him. Wilk alleges this deliberate indifference and inaction constituted a breach of their duty to protect him under the Eighth Amendment. (ECF No. 57).

Title 42 U.S.C. § 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. Cnty. of L.A.*, 442 F.3d 1178, 1185 (9th Cir. 2006).

As an initial matter, the second element has been satisfied. Defendants do not contest that the actions underlying the complaint were committed under color of law. (*See* ECF Nos. 33, 77). Moreover, the defendants were employed by HDSP during all times relevant to the underlying incidents and were acting in their official capacities at HDSP where Wilk was incarcerated. (ECF Nos. 18, 33).

The Eighth Amendment provides "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth

Amendment prohibition against cruel and unusual punishment applies to state action through the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666 (1962). Specifically, the Eighth Amendment imposes on prison officials a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).

In the instant motion, defendants assert that they are entitled to qualified immunity. (ECF No. 77).

### B. Qualified Immunity

When a plaintiff brings a claim under 42 U.S.C. § 1983, government officials sued in their individual capacities may raise the affirmative defense of qualified immunity. *See, e.g.*, *Spoklie v. Montana*, 411 F.3d 1051, 1060 (9th Cir. 2005); *Goodman v. Las Vegas Metro. Police Dep't*, 963 F. Supp. 2d 1036, 1058 (D. Nev. 2013). Qualified immunity protects law enforcement officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "The principles of qualified immunity shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law." *Id.* at 244. It allows for officials to make reasonable mistakes regarding the lawfulness of their conduct by excusing reasonable mistakes. *See id.* at 231.

Deciding whether an officer is entitled to qualified immunity is a two-prong inquiry. First, the court assesses whether the plaintiff has alleged or shown a violation of a statutory or constitutional right. *Id.* at 232. In the second prong of qualified immunity, the court decides whether the right at issue was clearly established at the time of the defendant's alleged misconduct. *Id.*

. . .

. . .

James C. Mahan
U.S. District Judge

- 6 -

### *1. Whether defendants violated a constitutional right*

Defendants argue that they are all entitled to qualified immunity. (ECF No. 77). Specifically, defendants Neven (the warden) and Nash (the associate warden) argue they "had no knowledge of the safety risk to [Wilk] prior to the attack and were not involved in the decision to house [Wilk] in Unit 8" and, as a result, are shielded from liability. (ECF No. 77 at 10).

Defendants admit that a reasonably jury looking at this record could find that defendant Leavitt, the "correctional case work specialist," knew about the threat and was involved in the housing decision. (ECF No. 77 at 9). Leavitt argues he is nonetheless immune from liability because "the record does not reflect that he would have perceived an '*excessive* or *intolerable* risk of serious injury'" as a result of the housing decisions regarding Nunley. (EF No. 77 at 9) (emphasis added). He also argues that he was aware that units 7 and 8 "were on separate schedules for most prison movement, including yard time and meals, and that if housed in Unit 8, [Wilk] would have only limited opportunities for contact with Inmate Nunley." *Id.* (citing ECF No. 77-7 at 3 ("Unit 7 and Unit 8 inmates had only limited opportunities for contact.")).

"A prison official's duty under the Eighth Amendment is to ensure 'reasonable safety,' a standard that incorporates due regard for prison officials 'unenviable task of keeping dangerous men in safe custody under humane conditions.'" *Farmer*, 511 U.S. at 844–45 (citations omitted). A prison official violates the Eighth Amendment when he is deliberately indifferent "to a substantial risk of serious harm to an inmate." *Id.* at 828.

An official has the duty to "take reasonable measures to guarantee the safety of inmates," which includes protecting prisoners from "violence at the hands of other prisoners." *Id.* at 832–33. The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "[P]rison officials who lack knowledge of risk cannot be said to have inflicted punishment." *Id.* at 844.

Wilk named Neven as a defendant because he was, in his capacity as the warden, allegedly "legally responsible for the operation of HDSP and for the welfare of all prisoners deemed 'in custody' at HDSP." (ECF No. 18 at 2). As to Nash, Wilk merely asserts that Nash "oversees housing, placement, and *possibly* participated in [Wilk]'s FCC." (ECF No. 18 at 2) (emphasis

James C. Mahan
U.S. District Judge

- 7 -

added). Wilk alleges only that "warden Neven, caseworker C. Leavitt, and AWO J. Nash obviously ignored [Wilk]'s earlier request for protection." (ECF No. 18 at 5). Despite this, Wilk has not shown by competent evidence that Neven or Nash had any knowledge of or role in the decision to relocate Wilk to unit 8 while Nunley remained in unit 7. (*See generally* ECF No. 18).

Defendants have argued that neither Neven nor Nash were present during the FCC or involved in the housing decisions regarding Nunley or Wilk. (*See* ECF Nos. 77-6, 77-7, 77-8). Prison records indicate that neither Neven nor Nash were in attendance at the FCC. (ECF No. 77-6 at 2).

Even if there are "underlying facts indicating a sufficiently substantial danger," a prison official cannot be found liable if he or she is unaware of the danger or believed, no matter how unsoundly, that the risk was insubstantial or nonexistent. *Farmer*, 511 U.S. at 844. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*

Beyond a conclusory allegation in his complaint, Wilk does not otherwise demonstrate that Neven or Nash had personal knowledge of the threat against him or involvement with the decision to house Wilk in unit 8.

Neven affirmatively states he had "no personal knowledge of a threat to [p]laintiff's safety and was not present at any classification or other meeting at which a threat to [p]laintiff's safety was discussed." (ECF No. 77-7 at 2–3). Similarly, Nash "had no personal knowledge of a threat to [p]laintiff's safety and was not present at any classification or other meeting at which a threat to [p]laintiff's safety was discussed. [She] also did not personally participate in any housing decision concerning [p]laintiff." (ECF No. 77-8 at 3). The uncontroverted evidence shows that these individuals were not deliberately indifferent toward Wilk.

Accordingly, Neven and Nash are entitled to qualified immunity.

Leavitt is a named defendant because of his role in conducting Wilk's FCC meeting, during which Wilk filled out a central monitoring system form naming Nunley an "enemy" to be added to his enemy list. (ECF No. 18 at 4). Leavitt, unlike Neven and Nash, admits to his involvement in the decision to relocate Wilk to unit 8. (*See* ECF No. 77 at 9).

James C. Mahan
U.S. District Judge

- 8 -

Generally, prison officials are given deference regarding their discretionary housing choices considering the difficulty in deciding when a risk "changes from being *a* risk of *some* harm to a *substantial* risk of *serious* harm." *Estate of Ford*, 301 F.3d at 1051. To violate Wilk's constitutional rights, the housing decisions made regarding Wilk and Nunley must be clearly unlawful to a reasonable officer in the situation. *Saucier v. Katz*, 533 U.S. 194, 202 (2001). Leavitt could have "know[n] all of the facts yet mistakenly, but reasonably, perceived that the exposure in any given situation was not that high" and still be entitled to qualified immunity. *Estate of Ford*, 301 F.3d at 1050.

"Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause." *Farmer*, 511 U.S. at 845.

In defining the deliberate indifference standard, the U.S. Supreme Court has held that:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. However, "merely being negligent, or failing to alleviate a significant risk that [one] should have perceived but did not, is not constitutionally deficient conduct." *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 838).

Wilk alleges that—because the enemy list was not updated at the time of the attack—Leavitt "ignored" Wilk's central monitoring system form and was deliberately indifferent to Wilk's safety. (ECF No. 18 at 3). Wilk further argues that "NDOC prison officials . . . knew of a life threatening attack and did nothing [to] even attempt[] to prevent it." (ECF No. 57 at 3).

The court disagrees; by moving Wilk to unit 8, defendants took affirmative steps to prevent the attack on Wilk. (ECF No. 77 at 9). Leavitt participated in the decision to relocate Wilk to unit 8 which, according to Leavitt, "appears to have been reasonable under the circumstances." (ECF No. 77-6 at 3). The decision was objectively reasonable because "reassigning [p]laintiff to [u]nit 8 while Inmate Nunley remained in [u]nit 7 would have significantly reduced opportunities for such an attack." (ECF No. 77-6 at 3). Further, Leavitt and HDSP staff went so far as to attempt

James C. Mahan
U.S. District Judge

- 9 -

1 to transfer Wilk from HDSP to Lovelock Correctional Center—at Wilk's request—but there was
2 no available bed space at the time. (ECF No. 77 at 5).

3 Further, both units 8 and 9 were "protective segregation units" which operated on different
4 schedules. (ECF No. 77-6 at 2). All out-of-unit movement by inmates in protective segregation
5 units "is under the direct supervision of an escorting officer." (ECF No. 77 at 5). As a result, the
6 chance of Nunley having any contact with Wilk was greatly reduced by the decision to move Wilk
7 to unit 8. (ECF Nos. 77 at 9; 77-6 at 1–2). Housing Wilk's "enemy" in a separate protective
8 segregation unit that operated on a different schedule constitutes an action taken to abate the
9 substantial risk of harm to Wilk and, therefore, does not constitute a violation of Wilk's Eighth
10 Amendment right. *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1067 (9th Cir. 2016).

11 Further, there is no evidence that Leavitt violated Wilk's constitutional rights by not adding
12 Nunley to Wilk's enemy list. Leavitt contends that, pursuant to prison policy, he forwarded the
13 central monitoring system form to the warden for approval before adding Nunley to Wilk's enemy
14 list. (*See* ECF Nos. 11-2 at 4; 77-6 at 2). Wilk does not deny the existence of such a policy.
15 Instead, Wilk relies on the fact that *someone* failed to update his enemy list, and offers the
16 conclusory argument that defendants are liable for that failure. (*See generally* ECF No. 57).
17 Therefore, Wilk fails to present adequate evidence that it was Leavitt's fault that the enemy list
18 was not updated more quickly.

19 Given Leavitt's actions to attempt to address the safety concern, Leavitt's knowledge that
20 unit 8 and unit 7 have only limited opportunities to interact, and given the lack of objective
21 evidence that Leavitt was aware of an excessive or intolerable risk to Wilk's health or safety, no
22 reasonable jury could find that Leavitt violated the Eighth Amendment and was deliberately
23 indifferent to Wilk's health or safety. *See Farmer*, 511 U.S. at 837.

24 In the instant action, Wilk has not shown that there was an objectively serious deprivation
25 of his constitutional rights sufficient to overcome qualified immunity. *Estate of Ford*, 301 F.3d at
26 1049. Similarly, Wilk has not shown defendants were deliberately indifferent to his safety. *See*
27 *id.* In sum, the court finds that it would not be clear to a reasonable prison official that defendants'
28 conduct was unlawful in the situation that they confronted. *See Saucier*, 533 U.S. at 202.

While the Wilk was assaulted by another inmate, there is no showing that defendants objectively deprived Wilk of his right to be protected. To the contrary, defendants acted in a way that recognized a substantial risk of serious bodily harm, and sought to prevent it. As discussed above, defendants took reasonable steps to ensure the Wilk was protected from Nunley by moving Wilk to unit 8, even though Nunley was not promptly added to Wilk's enemy list. Defendants did not deliberately disregard Wilk's safety, and they made reasonable housing decisions accordingly. Consequently, there is no Eighth Amendment violation, and Wilk fails on the first prong of the qualified immunity analysis.

Even drawing all inferences and resolving all conflicts in the evidence in Wilk's favor, no reasonable jury could render a verdict for Wilk. Accordingly, the defendants are entitled to summary judgment as to all claims on the grounds of qualified immunity.

### *2. Clearly Established*

Having resolved the first prong of the qualified immunity inquiry in favor of the defendants, the court need not address whether the alleged violation of Wilk's constitutional rights is in line with clearly established precedent.

### IV. Conclusion

Defendants are entitled to qualified immunity and, consequently, are protected from liability in the present action. As a result, defendants are entitled to judgment as a matter of law. Moreover, Wilk will not be granted leave to amend because any such amendment would be futile. The court need not consider the remaining motions because the defendants are entitled to judgment as a matter of law.

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' motion for summary judgment (ECF No. 77) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that Wilk's rule 8 motion for relief (ECF No. 44) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that Wilk's motion for summary judgment (ECF No. 46) be, and the same hereby is, DENIED.

**James C. Mahan**
**U.S. District Judge**

IT IS FURTHER ORDERED that Wilk's renewed motion for summary judgment (ECF No. 57) be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that defendant's motion for leave to file a response (ECF No. 70) be, and the same hereby is, DENIED as moot.

The clerk is instructed to enter judgment accordingly and close the case.

DATED November 14, 2017.

_____
UNITED STATES DISTRICT JUDGE